442 So.2d 699 (1983)
STATE of Louisiana
v.
Robert LEAGEA.
No. 83KA0376.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Premila Chumbley, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Vincent Wilkins, Jr., Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Robert Leagea (defendant) was charged by bill of information with possession of a firearm by a person convicted of a felony, in violation of La.R.S. 14:95.1. After trial by jury, defendant was found guilty as charged. He was sentenced to three years at hard labor without benefit of probation, parole, or suspension of sentence and to pay a fine of $1,000.00 or in default of payment thereof, to be confined in the East Baton Rouge Parish Prison for thirty days. The trial court suspended the fine. Defendant appeals his conviction and sentence and alleges one assignment of error.
FACTS
Paul Maranto, a deputy sheriff for East Baton Rouge Parish, was on special patrol during December of 1981 checking the various Louisiana National Bank branches within his zone. On December 7, as he approached the LNB branch on Gus Young Avenue in Baton Rouge, he saw defendant in a parked automobile speaking to another man in a car beside his. When the men noticed Maranto approach, they both started *700 to exit the lot in separate directions. Defendant made a motion like he was either placing or moving something under the seat of the car. Defendant left the parking lot and proceeded in a westerly direction. Maranto followed and noticed that his license plates had expired. Maranto displayed his red lights, sounded his siren, and pulled defendant over. Maranto ordered defendant out of his vehicle two or three times. Defendant hesitated at first but finally stepped from the car. Maranto told him to stand at the rear of his car while he approached the front of the vehicle. The driver's door had been left open. He looked inside and saw a pistol lying on the floorboard of the driver's side. He retrieved the gun, went to his unit, radioed his office and learned that defendant was a convicted felon. He then advised defendant that he was under arrest and orally gave him his Miranda rights. When he asked defendant if the gun was his, defendant told him, "Yes, I won it in a dice game about a year ago."
However, defendant testified at trial that the gun did not belong to him; that he had never seen the gun before; and that he at no time admitted that he had won the gun in a dice game. He also testified that he had two prior burglary convictions; that Maranto did not advise him of his rights; and that he had a broken leg.
ASSIGNMENT OF ERROR
Defendant alleges that the trial court committed error when it ruled admissible a statement made by him while being detained because his detainment was illegal, so any evidence acquired during that time was inadmissible. The statement was the admission of ownership of the gun which was discovered by Maranto on the floorboard of defendant's automobile.
THE STOP
Under the Louisiana Highway Regulatory Act, Chapter 1 of Title 32, Louisiana Revised Statutes, sections 1-398.5 (1950), an officer of the law has full authority to stop a motorist and issue a citation to him for an expired registration, license plates, and inspection sticker. La.R.S. 32:5. When Maranto saw that the license plates on defendant's moving vehicle had expired, he was under a duty to stop him and issue a citation. He stopped him and discovered that defendant's inspection sticker had expired. He issued a citation for that violation also.
Maranto admitted that he stopped defendant because he saw that his license plates had expired and also because of the suspicious way defendant had acted in the bank parking lot. It was a combination of these two factors which prompted the stop.
Maranto had to order defendant out of the car two or three times before he complied. When defendant finally did get out and go to the rear of his car, Maranto, obviously mindful of defendant's hesitation and aware of the suspicious movements which caused his original concern, approached the open door of the car, looked inside, and saw the pistol on the floorboard. It is this act of looking in the car that defendant complains is an unreasonable search and seizure in violation of the Fourth Amendment. He urges that the statement obtained after that search is tainted and inadmissible under the exclusionary rule.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that following a lawful investigatory stop police officers may, under certain circumstances, constitutionally conduct limited searches without a warrant for weapons. The opinion emphasizes that the sole justification for such a search is the safety of the officers and others and, consequently, the scope of the search must be limited to the discovery of weapons. State v. Reed, 388 So.2d 776 (La.1980). Although Terry involved the stop and subsequent pat-down search of a person, the court was careful to note that it need not develop at length the limitations which the Fourth Amendment places on a protective search and seizure for weapons. It directed that these limitations would have to be developed "in the concrete factual circumstances of individual cases." Terry, 88 S.Ct. at 1884.
*701 In State v. Reed two police officers on a routine traffic patrol stopped a car for having an expired brake tag. They approached on either side of the car, asking the defendant and the passenger to step out of the car. As the defendant exited the vehicle, one of the officers spotted on the front seat a pistol with the barrel stuck into the crack of the seat. He ordered the defendant and the passenger to the rear of the car and removed the pistol. Upon learning that the defendant was a convicted felon, the officers placed him under arrest for possession of a firearm by a convicted felon. Defendant's motion to suppress was denied, and he was convicted.
The Louisiana Supreme Court affirmed the conviction, citing Terry and Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Recognizing that it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties, the court found that it was "reasonable" for the officers to take temporary custody of the weapon for their own protection during the course of the investigation.
Finally, we note that the U.S. Supreme Court once again took up the issue of the Terry protective search in Michigan v. Long, ___ U.S. ___, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Long was convicted of possession of marijuana obtained by two deputies who stopped him after observing his car traveling erratically and at an excessive speed. Long was the only occupant of the automobile, and he met the deputies at the rear of the car after he was stopped. The door on the driver's side of the car was left open. One of the deputies requested Long to produce his operator's license and had to repeat the request before Long complied. The officer then requested that Long produce the vehicle registration. After the officer repeated this request, Long turned from the officers and began walking toward the open door of the vehicle. The officers stopped Long and frisked him at that point but found no weapons. One of the officers then kept Long at the rear of the vehicle while the other flashed his light into the interior of the vehicle. He noticed something protruding from under the armrest on the front seat and lifted the armrest. He saw an open pouch on the front seat and determined that it contained what appeared to be marijuana. Long was then arrested.
The court chose this case to specifically address the proper area of the Terry search. It reiterated the holding of Mimms allowing police to order persons out of an automobile during a stop for a traffic violation and frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous. It also recognized the fact that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed. The court further relied upon its finding in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) that articles inside the passenger compartment of an automobile are generally within the area into which an arrestee might reach in order to grab a weapon. The court recognized that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger." Long, 103 S.Ct. at 3480. Based on the circumstances present in Long, the court concluded that:
[T]he balancing required by Terry clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.... Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile. Long, 103 S.Ct. at 3481
Our reliance on the foregoing jurisprudence requires that we carefully examine the circumstances of this search to determine if it was permissible under the *702 Fourth Amendment. Considering defendant's furtive gesture when he first saw Maranto, his repeated hesitation after Maranto's requests for him to get out of the car, and his unrestrained proximity to the open door once he did leave the car, we find that Maranto did possess an "objectively reasonable belief that the suspect [was] potentially dangerous." (Emphasis added.) Long, 103 S.Ct. at 3481. We therefore find that Maranto's immediate act of looking into the vehicle was not prohibited by the Fourth Amendment.
THE STATEMENT
Maranto testified that he arrested defendant and orally advised him of his Miranda rights. Thereafter, in response to his questions, defendant voluntarily admitted that the gun was his and said, "I won it in a dice game about a year ago."
The trial court denied defendant's motion to suppress the statement and ruled it admissible. We agree. The search conducted after the valid stop was constitutional under the Fourth Amendment, Michigan v. Long, and State v. Reed. Any voluntary statements made by defendant were admissible and entitled to be presented to the jury. Here, the jury believed Maranto's version of the facts as it found defendant guilty. We cannot say that the jury was wrong in so finding.
CONCLUSION
The search was constitutional, so the motion to suppress was properly denied. The defendant's conviction and sentence are affirmed.
AFFIRMED.
CRAIN and LANIER, JJ., concur and assign reasons.
CRAIN, Judge, concurring.
I fully subscribe to the result reached in this case. However, I do not subscribe to any implication that an invalid search may in and of itself taint a subsequent inculpatory statement.
Unfortunately, there exists jurisprudence that an invalid arrest may taint a confession obtained as a result of that arrest. State v. Burton, 416 So.2d 73 (La.1982); State v. Leatherwood, 411 So.2d 29 (La. 1982). This is established in spite of the fact that there are ample safeguards to protect the giving of a statement separate and apart from the safeguards surrounding an arrest. A person is constitutionally guaranteed Miranda warnings before a statement is given, and additionally the law of this state requires that a statement be free and voluntary. La.R.S. 15:451. Length and circumstances of detention are pertinent facts in determining whether a statement is free and voluntary. State v. Neal, 321 So.2d 497 (La.1975); State v. Evans, 317 So.2d 168 (La.1975). This should be the basis for analysis of whether a statement is validly taken. The technical aspects of the validity of the arrest or detention should have nothing to do with it, although the cases cited above indicate that validity of the arrest has entered the picture. However, an inquiry as to the validity of a search and seizure to a subsequent statement has not yet been deemed necessary, and this case should not be construed as superimposing any such requirement.
LANIER, Judge, concurring.
I concur with the result.
Leagea was stopped by Officer Maranto for committing the crime of operating a motor vehicle with an expired registration license plate. La.R.S. 14:7; La.R.S. 47:536; La.R.S. 32:51 and 57. When a person commits a crime in the presence of a police officer (as in the instant case), the officer may arrest him or may stop him and demand identification and an explanation of his actions. La.C.Cr.P. arts. 213 and 215.1. When a person is stopped for a traffic offense, special procedures are provided by law for what action a police officer may take. La.R.S. 32:391 and 411; Richard v. State, Department of Public Safety, 436 So.2d 1265 (La.App. 1st Cir.1983); Moss v. Maryland Casualty Company, 392 So.2d 772 (La.App. 3rd Cir.1980).
*703 A well-established exception to the rule that a warrantless search is unreasonable is that a search may be conducted without a warrant when it is an incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The reasons for allowing such a search are to protect police officers by removing weapons that the person arrested might use to resist arrest and/or escape and to prevent the concealment or destruction of evidence. If the person arrested is in an automobile or has left the vehicle but remains in proximity to the vehicle, the scope of such a search extends to the passenger compartment of the vehicle. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Drott, 412 So.2d 984 (La.1982); CONTRA: State v. Hernandez, 410 So.2d 1381 (La.1982).
It has been held that stopping a person for a minor traffic offense is not an arrest and cannot authorize a search incident to an arrest. State v. Blanchard, 374 So.2d 1248 (La.1979); State v. Daigre, 364 So.2d 902 (La.1978); State v. Breaux, 329 So.2d 696 (La.1976); Cf. State v. Patton, 374 So.2d 1211 (La.1979). (None of these cases discussed the special procedures for traffic cases in La.R.S. 32:391 and 411 which authorize arrest as an alternative.) Even if stopping a person for a traffic offense is a less restrictive form of restraint than an arrest, the need to safeguard the security of the police officer in the performance of his duty would appear to be the same. Thus, when a police officer makes an investigatory stop of an automobile and observes a weapon from a place where he has a legal right to be, he may temporarily take possession of the weapon during the course of the investigation for his own protection. State v. Husband, 437 So.2d 269 (La.1983); State v. Cobb, 419 So.2d 1237 (La.1982); State v. Reed, 388 So.2d 776 (La.1980).
While following Leagea, Officer Maranto observed that he appeared to be putting something under the front seat of his vehicle. When Leagea exited his vehicle, he left the door open on the driver's side. After Leagea walked to the rear of the vehicle, Officer Maranto went to the driver's side of the vehicle to look in because of the movements he observed when following Leagea. While standing on the outside of the vehicle (a place where he had a legal right to be) Maranto observed a pistol on the floorboard. Maranto took possession of the weapon (a .38 caliber R.G. blue steel revolver, # 81-28324) and removed six live rounds of ammunition from its chambers. Maranto took the pistol and the bullets back to his unit and asked for a radio check to see if the gun was stolen or if Leagea was a convicted felon. It would not have been prudent for Maranto to leave the gun in the car while making the radio check from his unit when Leagea was in close proximity to the vehicle.
A strong argument can be made under the particular facts of this case that Leagea was under arrest when he was stopped by Maranto. However, whether Leagea was arrested or merely "detained" is not determinative. Maranto had a legal right to stop Leagea because he was committing a crime in Maranto's presence. Maranto had a legal right to stand outside Leagea's vehicle and look in through the open door. Maranto had a legal right to take temporary possession of the gun for his own protection during his investigation. Maranto gave Leagea a Miranda warning before questioning him about the gun. The statement given by Leagea was admissible in evidence.