489 So.2d 1289 (1986)
STATE of Louisiana
v.
Gregory PAYNE.
No. 85 KA 1481.
Court of Appeal of Louisiana, First Circuit.
May 23, 1986.
Bryan Bush, Dist. Atty., Baton Rouge by Richard Sherburne, Asst. Dist. Atty., for plaintiff-appellee.
Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Gregory Payne (defendant) was charged by bill of information with armed robbery in violation of LSA-R.S. 14:64. He filed a motion to suppress physical evidence as being the fruit of an illegal search. After a hearing, the motion was denied. The bill of information was amended to charge defendant with simple robbery in violation of LSA-R.S. 14:65. Defendant pled guilty but reserved his right to appeal the denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976).
Defendant was sentenced to a two-year term of imprisonment at hard labor, with credit for time served, the remainder of *1290 which was suspended; and he was placed on supervised probation for three years.
Defendant appeals and urges as his sole assignment of error the denial of his motion to suppress physical evidence. He asserts that the State failed to show a requisite factual basis to support an investigatory stop under LSA-C.Cr.P. art. 215.1. He further argues that LSA-C.Cr.P. art. 215.1 authorizes the search of the "person" for weapons but does not provide authority to search "property" belonging to the person. He argues that to lawfully search the property (in this case, a plastic bag) the police must have had a search warrant, which they did not have, or the search must have been incident to a lawful arrest. Defendant asserts that he was not arrested until after the search. He further argues that, although the instant facts do not support an arrest prior to the search, even assuming arguendo that he had been placed under arrest prior to the search, the arrest was without probable cause. Defendant concludes that he was subjected to an unconstitutional investigatory stop; that the search was outside the permissible scope of LSA-C.Cr.P. art. 215.1(B) and not incident to a lawful arrest; and, alternatively, that he was arrested without probable cause.
The State responds by contending that the police had the requisite reasonable suspicion to lawfully conduct a Terry stop, and once the stop occurred the officers' protective search for weapons extended to a search of defendant's plastic bag. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The State argues that the protective search of defendant's plastic bag, in close proximity to him, was justified under the provisions of LSA-C.Cr.P. art. 215.1(B) and the rationale of Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The State concludes by asserting that the discovery of items found inside defendant's plastic bag (clothing identified as the type worn by the suspected armed robber) escalated the facts to a level sufficient to provide probable cause for defendant's subsequent arrest.
No witnesses actually testified at the motion to suppress hearing. However, the State and the defense stipulated that the testimony of Officer Oscar Trammell of the Baton Rouge City Police, if he were called, would be the same as that previously elicited from him at the preliminary examination. It was additionally stipulated that if Officer Ronald Norman, Officer Trammell's partner, were called as a witness, his testimony would be the same as Trammell's.
At the preliminary examination, Officer Trammell testified that on March 15, 1985, at about 1:30 a.m., he and his partner, Ronald Norman, were on patrol in their unmarked police unit when they heard over their police radio that an armed robbery had occurred at the Racetrack Service Station on College Drive in Baton Rouge. Officer Trammell testified that a description of the armed robber was broadcast over the police radio by Officer Drickerman, the first policeman to arrive at the scene.
The State and the defense stipulated at the motion to suppress hearing that the general description of the armed robber, as broadcast over the police radio, was as follows: "A black male, thirty years, 5' 8", medium build, light blue fisherman's cap with dark blue band, dark blue coveralls, red tee shirt, had stolen approximately $60.00 from the station." They also stipulated that Officer Thompson, the investigating officer on the case, added to the general description that "the robber may have had a plastic bag."
Officer Trammell's testimony regarding the description of the robber as broadcast over the police radio, although otherwise consistent with the description stipulated, contained additional information, i.e., the robber was dark-complexioned, was carrying a white plastic bag, and had an odor of alcohol about his breath.
Officer Trammell testified that he and Officer Norman responded to the alert by proceeding to the general area of the crime and looking for an individual fitting the robber's description. The officers observed defendant riding a bicycle in the 4400 block of Wells Street. Defendant was the only person on the street at that time. Defendant initially passed the vehicle in which the *1291 officers were riding. The officers then stopped their vehicle, turned it around, and subsequently stopped him.
Trammell testified that defendant's "general" build was about the same as he had heard described over the police radio, i.e., medium build, about 5' 8"-5' 9" in height and dark-complexioned; that defendant appeared to him to be that height even though he was on a bicycle; that at the time of the stop, defendant was wearing "jogging type clothes, blue hoodpullover" and black jogging pants; that he could tell, when he first sighted defendant, that defendant was not wearing a blue jumpsuit or a "fishing type" hat; that, although he and his partner had some knowledge of what the robber was supposed to have been wearing, they also knew it was not unusual for a robber to change clothing after the commission of a robbery; that, at the time of the stop, their reason for making the stop was to identify defendant and determine whether or not he was the robber wearing different clothes; that he had seen the white plastic bag attached to the carriage rack of defendant's bicycle at the time defendant rode by their vehicle prior to the stop; that the bag was similar to grocery bags used at A & P Food Stores.
Trammell also testified that the actual stop occurred at the corner of Wells Street and Valley Street, at approximately 2:10 a.m.; that they stopped their unit and requested that defendant stop; that defendant complied and got off his bicycle; that they identified themselves as police officers; that, as they approached defendant, they immediately smelled alcohol about his breath from a distance of two or three feet, thereby increasing their suspicion;[1] that neither he nor his partner had drawn their guns in the process; that they could clearly see that defendant had no weapons in his hands; that defendant was placed against the police unit and quickly searched for weapons; that after finding no weapons on defendant's person, the plastic bag was removed from the bicycle and found to contain a blue jumpsuit and a "fishing type" hat, items of clothing matching those worn by the robber; that no weapon was found; that at the time of discovery of the items of clothing, defendant was first told that he was being detained as a suspect in an armed robbery that had just occurred; and that at that point he was physically detained, and he was orally advised of his constitutional rights.
Investigating Officer Dean Thompson was notified by Officers Trammell and Norman of their findings. At about 2:25-2:30 a.m., defendant was transported to the Racetrack Service Station so Andrea Elkins, the robbery victim, could see him. She was, however, unable to identify defendant as the robber but did identify the clothing found inside the plastic bag as that worn by the robber.
The Fourth Amendment to the United States Constitution and Article I, section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both federal and state jurisprudence. Terry; State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Rodriguez, 476 So.2d 994 (La.App. 1st Cir.1985). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Belton; State v. Rodriquez. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton; State v. Rodriquez. The totality *1292 of circumstances must be considered in determining whether or not reasonable cause exists. State v. Belton. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or seize against the harm of invasion. State v. Rodriguez.
Herein, Officers Trammell and Norman, while on patrol in their unmarked police unit at about 1:30 a.m. on the date in question, were notified over their police radio that an armed robbery had occurred. They were also given the robber's physical description, a description of his clothing, and an indication that he might be carrying a white plastic bag and had the odor of alcohol about his breath.
The officers proceeded to the area of the crime at approximately 2:10 a.m. Defendant was first observed riding a bicycle some ten blocks from the robbery. He rode the bicycle past the police unit. Trammell's testimony indicates defendant's "general" build was about the same as the description of the robber that had been transmitted over the police radio. The officers were fully aware that robbers commonly change clothing following such crimes and they were not deterred in their investigation by the fact that defendant was clothed differently from the description broadcast. In addition to the physical similarity of defendant to the robber, the officers had noticed, prior to the stop, that a white plastic bag was attached to the carriage of defendant's bicycle, which augmented the basis for the stop. Under the facts and circumstances within the knowledge of Officers Trammell and Norman, we find that reasonable cause existed for suspecting that defendant might have been the robber. Thus it was proper for the officers to stop and detain him for questioning. Furthermore, we find that the search of defendant's white plastic bag, located on the carriage of defendant's bicycle, was within the scope of search allowed under Terry.
In deciding that the initial search was valid, we look to the reasoning we employed in State v. Leagea, 442 So.2d 699 (La.App. 1st Cir.1983), in which we addressed the issue of the permissible scope of a Terry search. In Leagea we concluded that when a detaining officer in making a Terry stop looks inside the car defendant had been driving prior to the stop and observes a pistol on the car's floorboard, the officer's action is not prohibited by the Fourth Amendment.
In Leagea, we relied on Michigan v. Long, where the United States Supreme Court addressed the proper area of a Terry search. In Long, officers stopped Long after they observed him driving erratically and at high speeds. He exited the car, left the door open and met the officers at the rear of the car. Initially, Long, who appeared intoxicated, failed to respond when asked to produce the vehicle registration, but then turned and walked toward the open door. The officers followed Long and observed a large hunting knife on the floorboard. He was then stopped and frisked, but no weapons were found. Long and one officer remained at the rear of the car, while another officer shined his flashlight into the vehicle's interior. The officer saw something protruding from under the armrest on the front seat. He then lifted the armrest and saw an open pouch containing a substance which he recognized as marijuana. The Court reviewed the principles it had established in Terry and the reasons for allowing a limited protective search for weapons without a warrant. It noted that, although Terry authorized a limited pat-down search of a person suspected of criminal activity rather than a search of an area, Terry need not be read as restricting the preventive search to the person of the detained suspect. Long, 103 S.Ct. at 3479.
Based upon the facts and circumstances presented in Long, the Supreme Court stated:
[T]he balancing required by Terry clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.... Just as a Terry suspect on the street may, *1293 despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile.... In any event, we stress that a Terry investigation, such as the one that occurred here, involves a police investigation "at close range," Terry, supra, 392 U.S., at 24, 88 S.Ct., at 1881, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger...." Id., at 28, 88 S.Ct., at 1883. In such circumstances, we have not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a Terry encounter. [footnote omitted]
Long, 103 S.Ct. at 3481-3482.
While the defendant here was on a bicycle and not in an automobile as in Leagea and Long, that factual difference does not lessen the applicability of the rationale of those cases to the instant facts. In Leagea and Long, the search involved the area inside the automobile, an unsecured area to which the suspects would have access if they broke away from the detention. Similarly, in the instant case, the white plastic bag resting on defendant's bicycle carriage was within an unsecured area to which defendant, a suspected armed robber, might have gained access and gotten a weapon. Thus the search of the white plastic bag was proper under the instant facts.
We find that the officers had reasonable cause for a Terry stop; that the search of defendant's plastic bag was a permissible search for weapons; that the trial court correctly denied defendant's motion to suppress the physical evidence discovered through that search; and that the officers could not be required to ignore the evidence they found in the bag. See Long, 103 S.Ct. at 3481.
Defendant's assignment of error is without merit.
AFFIRMED.
NOTES
[1] Since the odor of alcohol was not detected by the officers until after initiation of the investigatory stop, that factor is not considered in the determination of reasonable causes to support the stop.