LeBLANC, Judge.
Johnnie Lee Hunt was charged in a two-count bill of information with possession of ethchlorvynol, in violation of La. R.S. 40:969C; and possession of marijuana with intent to distribute, a violation of La. R.S. 40:966.[1] Defendant filed two motions *1214 to suppress, claiming in one motion that his statements were illegally taken, and in the other motion that physical evidence was illegally seized. Both motions were denied after a hearing. Thereafter, Count I, the charge of possession of ethchlorvynol, was dismissed; and defendant pled guilty to the charge of possession of marijuana with intent to distribute, reserving his right to appeal the ruling denying the motion to suppress physical evidence. The trial court imposed a sentence of five years at hard labor. However, the court suspended that sentence and placed defendant on supervised probation for five years, with the special conditions that he submit to periodic drug screenings, that he pay $10.00 per month to the Department of Probation and Parole to help defray the costs of probation, that he serve nine months in the St. Mary Parish Jail, and that he pay a fine of $5000.00 and court costs. Defendant has appealed, claiming in his only assignment of error that the court erred by denying his motion to suppress physical evidence.
Defendant and his female companion, Renee Marie Dehart Landry, were arrested after several clear plastic bags of marijuana were seen inside defendant’s car by Detective Cecil Jackson and Officer James Blair of the Morgan City Police Department during an investigatory stop. Officer Blair stopped the vehicle in response to an alert issued by Detective Jackson upon information provided by the United States Customs Department. Officer Blair stopped the vehicle and detained the parties until Detective Jackson arrived. After he arrived at the scene, Detective Jackson asked Ms. Landry to retrieve the vehicle registration. As she attempted to do so, she knocked over a paper sack, exposing a number of clear plastic bags of a substance which appeared to Detective Jackson to be marijuana. Detective Jackson showed the bags to Officer Blair and then arrested the couple. A later search of the trunk of the vehicle resulted in the discovery of thirteen pounds of marijuana concealed therein.
Defendant’s sole contention in his appellate brief is that the investigatory stop was an invalid seizure. He argues, therefore, that the marijuana found inside the passenger area of the car should have been suppressed.
During the hearing on the motion to suppress physical evidence, Detective Jackson testified that he issued a “BOLO”, an alert bulletin, upon information provided by Agent Adrian Fortier of the United States Customs Service, who told him that that agency believed defendant was trafficking in large quantities of marijuana. Detective Jackson related that Agent Fortier called him at approximately 9:00 a.m. on April 7, 1988, and told him that defendant and a female companion had been observed leaving a motel room and that defendant was carrying several large bags believed to contain marijuana. He further related that, after the couple checked out of the motel room, a customs agent inspected the room and found marijuana residue in the bathtub and marijuana gleanings on a table. Thereafter, upon request of Agent Fortier, Detective Jackson issued a “BOLO” for defendant’s car. Detective Jackson testified that he “believed” that the bulletin noted that defendant was wanted on drug trafficking charges. The car was stopped at approximately 3:30 that afternoon in Morgan City.
Officer Blair also testified at the hearing on the motion to suppress. He related that he stopped the vehicle because of the alert issued by Detective Jackson. Officer Blair further related that he was not personally aware of information alleging that defendant was trafficking in narcotics, and he testified that he did not recall whether or not the alert issued by Detective Jackson noted that defendant was suspected of drug trafficking.
*1215 Agent Fortier also testified at the suppression hearing. He related that he had received a telephone call on the day-prior to defendant’s arrest, advising him that defendant had registered at a motel in St. Mary Parish. Customs agents had been in contact with local law enforcement officers about defendant for several months prior to that date. The informant, whose identity was withheld, told Agent Fortier only that defendant could be found at the hotel and did not disclose information connecting defendant to criminal activity.
Agent Fortier related that the Customs Service had received information connecting defendant to drug trafficking and other drug traffickers. He testified that, several months before, he had searched a motel room after defendant had vacated it and had found evidence of marijuana in the motel room. On this occasion, after receiving information concerning defendant’s location, Agent Fortier requested another customs agent, Brian Dorian, to respond to the call.
Agent Dorian testified that he went to the Plantation Inn in St. Mary Parish on April 8,1988, at the request of Agent Fortier. Upon his arrival, he found that defendant and his companion already had vacated the motel room. With the permission of the manager, he searched the room; and he found marijuana residue in the bathtub and on a desk in the room, as well as a box of zip-lock bags in the trash can. Agent Dorian then notified Agent Fortier of his discoveries.
Defendant submits that the investigatory stop was illegal because Officer Blair did not have reasonable cause to believe that he had committed, was committing, or was about to commit an offense. He contends that the information given to Detective Jackson by Agent Fortier was not sufficient to justify the stop and, further, that the information could not supply grounds for the detention because the information that defendant was suspected of narcotics trafficking had not been communicated to Officer Blair. Defendant claims, as well, that Detective Jackson’s testimony supporting the stop was not credible because Detective Jackson testified that he was told defendant was observed by a customs agent leaving the motel carrying a large bag believed to be marijuana, although both customs agents involved in this investigation specifically disclaimed that defendant was seen leaving the motel.
La.C.Cr.P. art. 215.1 provides for the temporary questioning of persons in public places, in pertinent part, as follows:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Reasonable cause for an investigatory detention is something less than probable cause, and cause must be determined under the facts of each case by considering whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. The totality of circumstances must be considered in determining whether or not reasonable cause exists. In order to assess the reasonableness of an officer’s conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Payne, 489 So.2d 1289, 1291-1292 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986).
Herein, it is impossible to reconcile Detective Jackson’s testimony that he was told customs agents observed defendant leaving the motel with a large bag believed to be marijuana with the testimony of the involved customs agents that no such surveillance was made. Nevertheless, it is clear that Detective Jackson was timely notified of the discovery of marijuana residue in the motel room vacated by defendant a short time before.
In United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court considered the applicability of investigatory detentions to situations wherein a complet *1216 ed offense was suspected. The court noted that “... if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion.” 469 U.S. at 229, 105 S.Ct. at 680. Therefore, even without the information that defendant was seen leaving the motel with a large bag believed to contain marijuana, the discovery of marijuana in the drain trap of the bathtub and on a table in the motel room, as well as the discovery of an empty box that had contained small plastic bags, supplied reasonable grounds to believe that defendant had committed an offense and an investigatory stop was authorized.
Defendant further claims that the stop was invalid because Officer Blair, who stopped defendant’s vehicle on the authority of the bulletin issued by Detective Jackson, did not have personal knowledge of the facts upon which the bulletin was based. However, in Hensley, the Court found that an officer could rely upon a flyer or bulletin issued by another department and need not have personal knowledge of the underlying facts. The Court concluded as follows:
[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, [citations omitted], to pose questions to the person, or to detain the person briefly while attempting to obtain further information .... Assuming the police made a Terry stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop, [citation omitted], and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department. 469 U.S. at 232-233, 105 S.Ct. at 682. [Emphasis original]
Herein, Detective Jackson issued the “BOLO” at the request of agents of the United States Customs Service, who had found evidence of marijuana trafficking in a motel room immediately after it was vacated by defendant. Detective Jackson was aware of the discovery of marijuana in the motel room at the time he issued the bulletin, and he was also aware of the ongoing investigation by customs agents of defendant’s marijuana trafficking. Information provided to him indicated that defendant used the motel room as a base for repackaging a bulk quantity of marijuana for distribution. Detective Jackson “believed” that he included a notation that defendant was wanted in connection with a narcotics trafficking investigation when he issued the bulletin through the police dispatcher; in any event, he was aware, at the time the bulletin was issued, of facts supplying a reasonable suspicion to justify the stop.
Hensley further requires that the detention that results from an investigatory stop based upon a bulletin must not be more intrusive than would be permitted to the issuing department. Herein, Detective Jackson testified that the bulletin he issued simply advised the officer who made the stop to contact Agent Fortier. Although Detective Jackson arrived at the detention scene minutes after the initial stop, Agent Fortier was in Houma, Louisiana, at the time of the stop and was not immediately available. Thus, in other circumstances, the type of bulletin issued herein (to detain the party until arrival of another officer who might be unavailable for a significant length of time) might result in a detention so lengthy or intrusive as to exceed the permissible limits of a Terry stop. See Hensley, 469 U.S. at 235, 105 S.Ct. at 683. However, it is irrelevant herein that Detective Jackson and Officer Blair intended to detain defendant until the arrival of Agent Fortier, because the “plain view” discovery of packages that appeared to be marijuana supplied grounds for defendant’s immediate arrest. Accordingly, we find that the detention was not so lengthy or intrusive as to exceed permissible limits for the investigatory stop.
*1217 We find, therefore, that Detective Jackson possessed articulable facts supporting a reasonable suspicion that defendant had committed an offense; and, therefore, Officer Blair’s reliance on the bulletin issued by Jackson justified the investigatory stop that occurred. Thereafter, the discovery of a quantity of marijuana inside the vehicle supplied grounds for defendant’s arrest. Accordingly, we find no error in the trial court’s ruling denying defendant's motion to suppress physical evidence. This assignment of error has no merit. ^
The conviction and sentence imposed by the trial court are affirmed.
AFFIRMED.

. La.C.Cr.P. art. 493 provides that "[t]wo or more offenses may be charged in the same indictment or information ... provided that the offenses joined must be triable by the same mode of trial." These offenses were improperly joined. The possession of ethchlorvynol (La. R.S. 40:964 and 40:969) is a relative felony, requiring trial by a jury of six members; and possession of marijuana with intent to distribute (La.R.S. 40:964 and 40:966) requires imprisonment at hard labor and, thus, must be tried before a jury of twelve members. See La.Const. art. 1 § 17; La.C.Cr.P. art. 782. However, mis-joinder must be urged by way of motion to quash. La.C.Cr.P. art. 495. See also State v. Mallett, 357 So.2d 1105 (La.1978), cert. den., 439 *1214 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979). Herein, defendant failed to file such a motion. Moreover, the state dismissed the charge of possession of ethchlorvynol before defendant entered his plea and, therefore, defendant could not have been prejudiced by the misjoinder. Accordingly, we find that defendant waived any claim to the improper joinder by failing to file a motion to quash.