IzHILLARY J. CRAIN, Judge Pro Tern.
Darin Keith Nixon, defendant, was charged by bill of information with possession with the intent to distribute cocaine, in violation of La.R.S. 40:967(A)(1). The defense filed a motion to suppress evidence which was denied after a hearing. Defendant thereafter pled guilty as charged, reserving the right to appeal the trial court’s denial of the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The court sentenced defendant to serve twelve years at hard labor, with credit for time served.
In this appeal, defendant contends the trial judge erred by failing to suppress the evidence seized at the time of his arrest.
FACTS
On November 19, 1993, defendant was arrested after dropping a cellophane wrapping containing what appeared to be crack cocaine. Because defendant pled guilty and there was no trial, the following facts are taken from the hearing on the motion to suppress the evidence. Terrebonne Parish Deputy Sheriff Steve Basco, narcotics division, was patrolling an area known for drug trafficking to execute arrest warrants on persons involved in earlier undercover narcotics transactions. He was accompanied by police officer Patrick Babin and two United States Customs agents, all members of a drug task force. They did not have an arrest warrant issued against defendant, but they knew him. The unmarked patrol ear they were using was known in the area! As the car approached the entrance to a trailer park, the members of the task force observed nine or ten people, male and female, standing in the street near a streetlight. Deputy Basco turned the ear, with the headlights beaming, into the crowd so the agents could determine whether any of the people were named on the warrants. As soon as the ear turned towards the group, the people scattered and walked away to the right or into the trailer park.
According to Deputy Basco, no one had exited the car or said anything to defendant, but as the others in the group dispersed, defendant, who had been on the perimeter of the group, turned and walked to the left by himself. Deputy Basco testified he could see defendant clearly in the headlights. He observed defendant look up and throw a package from his right hand to the ground. Deputy Basco directed Agent Babin to stop defendant while Deputy Basco retrieved the object. It was cellophane wrapping | gcontaining the rocks of cocaine. There were no other objects or persons in the vicinity. Defendant then was arrested.
LEGALITY OF SEIZURE AND ARREST
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909, 911 (La.1986). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case. The question is whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from government interference. State v. Payne, 489 So.2d 1289, 1291 (La. *404 App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986).
The totality of circumstances must be considered in determining whether or not reasonable cause exists. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543. (1984). An officer’s knowledge that a certain area is one of frequent criminal activity is a legitimate, recognized factor which may be used to judge the reasonableness of a detention. State v. Collins, 93-1198 (La. 5/20/94), 637 So.2d 741, 743. Such so-called high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. State v. Buckley, 426 So.2d 103, 108 (La.1983).
In the instant ease, the officers were patrolling an area known as a place for drug trafficking. Although the officers were not looking' for defendant, they recognized him because he had been involved in drug activities. Deputy Basco saw defendant turn away to leave the area alone as the police vehicle approached, and saw defendant drop something from his right hand. These particular facts and circumstances provided Deputy Basco with articulable knowledge sufficient to reasonably suspect defendant of criminal activity and, therefore, reasonable cause for investigatory detention. When Deputy Basco retrieved the drugs, he had probable cause to arrest. Hence, the action taken by the officers, in stopping defendant, qualified as a legal investigatory stop. The subsequent retrieval of the drugs resulted in the initial reasonable suspicion rising to the level of Uprobable cause for defendant’s arrest. Therefore, the evidence was seized as a result of an arrest for which Deputy Basco had probable cause.
Moreover, for the reasons which follow, we conclude that, even if Deputy Basco lacked the initial reasonable suspicion, because defendant abandoned the cellophane wrapping containing the contraband prior to an “actual stop” or an “imminent actual stop,” the evidence was lawfully seized.
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the U.S. Supreme Court held that an individual is not “seized” within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. The Louisiana Supreme Court, in State v. Tucker, 626 So.2d 707, 712 (La.), on rehearing, 626 So.2d 720 (La.1993), adopted the definition of an “actual stop” of a citizen as defined in Hodari D. However, recognizing that Article 1, Section 5, of the Louisiana Constitution provides greater protections than those provided by the Fourth Amendment of the U.S. Constitution, the Louisiana Supreme Court went beyond Hodari D., by holding that our constitution also protects individuals from “imminent actual stops.”
In Tucker, the Court recognized the necessity for determining what constitutes an “imminent actual stop” for those situations where the police attempt to seize an individual, but the individual neither submits to the police show of authority, nor is physically contacted by the police. The Court listed the following factors for use in assessing the extent of police force employed and in determining whether or not that force was virtually certain to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, 626 So.2d at 712-713.
Utilizing the factors listed in Tucker, we find that defendant’s “actual stop” was not “imminent” at the time he abandoned the evidence. The police unit was in the area on | ganother mission. The officers did not exit their car nor make any movement indicating they intended to approach defendant. Defendant and the crowd of people disbursed freely and without any interference by the officers. Under these circumstances, we find that defendant was not in imminent danger of being “actually stopped” by the officers. *405 Therefore, even if the officers initially lacked probable cause to arrest defendant, once defendant abandoned the drugs, the arrest of defendant and seizure of the evidence were lawful. Accordingly, for the reasons herein stated, this assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.