521 So.2d 582 (1988)
STATE of Louisiana
v.
Johnnie Jerome RAY.
No. 87 KA 0753.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
Writ Denied May 20, 1988.
*583 Warren Daigle, Asst. Dist. Atty., Courthouse Annex, Houma, for plaintiff and appelleeState of La.
Clifford E. Foster, Indigent Defenders Office, Houma, for defendant and appellant Johnnie Jerome Ray.
*584 Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
Johnnie Jerome Ray was charged by bill of information with attempted distribution of a substance falsely represented to be a controlled dangerous substance, in violation of LSA-R.S. 14:27 and 40:971.1. He pled not guilty, was tried by jury and was found guilty as charged. Defendant was subsequently charged, adjudged and sentenced as a Second Felony Habitual Offender. The court sentenced defendant to imprisonment at hard labor for a term of five years. He has appealed, urging four assignments of error to wit:
1. The trial court erred by denying defendant's motion to suppress evidence seized from his person.
2. The trial court erred by denying defendant's motion for continuance.
3. The trial court erred by overruling defense counsel's objection to the admission of S-2 into evidence.
4. The trial court erred by denying defendant's motion for new trial.
At about 1:00 a.m. on June 14, 1986, Detective Keith Gallicio of the Houma City Police Department was inside George's Lounge in Houma. He observed defendant standing near the jukebox acting in a suspicious manner, i.e., looking at the cashier and "all over." Later, from a distance of about fifty feet, Gallicio noticed defendant playing pool with another man. Gallicio testified that defendant kept "pulling around in his waistband" but that he could not tell what was being pulled, from where he was standing.
Gallicio talked to Billy Foret, the manager of the lounge, who identified the man with whom defendant was playing pool as Peter Demitro. In accordance with Gallicio's general instructions, the manager walked to where Demitro and defendant were and told Demitro he had someone for him to meet. Demitro then walked over to where Gallicio was standing, and the manager introduced Demitro to Gallicio. Demitro told Gallicio that defendant had asked him if he wanted to buy some drugs. Gallicio told Demitro to go back to where defendant was and that if defendant wanted to sell any drugs to get him to go inside the restroom and conclude the transaction there.
Thereupon, Demitro rejoined defendant. They started to shoot pool again. Defendant again broached the subject of drugs, asking Demitro if he was sure he did not need any drugs or if he knew anyone else who needed drugs. Demitro asked defendant what kind of drugs he had. Defendant stated that he had amphetamines and also cocaine. Demitro told defendant that he would buy "some."
At defendant's suggestion, Demitro followed him into the restroom. Gallicio and a fourth man followed them inside. According to Demitro's testimony, defendant waited until the fourth man left the restroom; and then, without giving any indication that he knew Gallicio was in the restroom, defendant pulled from his waistline a small, clear bag containing blue tablets. Demitro asked what it was, and defendant stated that it was "speed" (a street name for amphetamines). Demitro asked defendant for the price. Defendant stated that the price was one dollar. Demitro agreed to the price; and, as he looked over his shoulder, he saw Gallicio walking toward him. When defendant saw Gallicio, he proceeded toward a toilet. Demitro testified that he guessed that defendant was going to throw the tablets into the toilet and that, in response, he pushed defendant against the wall.
Gallicio testified that, as he walked toward defendant to arrest him, defendant was placing the clear bag back inside his waistline. Gallicio grabbed defendant and advised him that he was under arrest. After a brief struggle, Gallicio handcuffed defendant and seized the blue tablets from defendant's waistline. Before Gallicio could advise defendant of his constitutional rights, defendant stated that the drugs were fake. According to Demitro, Gallicio then told defendant that he needed to "shut up" before he got himself into more trouble. At that point, Gallicio gave defendant his constitutional rights.
*585 The state introduced S-1 into evidence, a scientific analysis report prepared by the Louisiana State Police Crime Laboratory, showing that the blue tablets seized from defendant did not contain any controlled dangerous substance.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by denying his motion to suppress physical evidence.[1] He argues that, because there was no probable cause to arrest him, the evidence seized from his person was not obtained as incident to a lawful arrest; and, therefore, the evidence should have been suppressed.
The state bears the burden of proving the admissibility of evidence seized during a search without a warrant. LSA-C. Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Shepherd, 470 So.2d 608 (La.App. 1st Cir.1985). One such exception to the rule is that a search may be conducted without a warrant when it is incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Shepherd, supra.
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213. Probable cause to arrest exists when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity and thus justify an infringement on his constitutionally protected right of freedom from governmental interference. State v. Buckley, 426 So.2d 103 (La.1983). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Buckley, supra; State v. Sterling, 479 So.2d 641 (La.App. 1st Cir. 1985), writ denied, 482 So.2d 626 (La.1986).
All of the information in the possession of the police is to be considered in the determination of whether or not probable cause existed for the arrest. State v. Buckley, supra. The quantity and quality of evidence needed for probable cause are measured by lesser standards than those for conviction of the defendant at trial. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Buckley, supra. Although mere suspicion cannot justify an arrest, the officer does not need proof sufficient to convict. State v. Sterling, supra.
The record reflects that, on the day of defendant's trial, the trial court conducted a suppression hearing prior to jury selection. During the hearing, the state presented the testimony of Detective Gallicio; and defendant testified in his own behalf.
Notwithstanding defendant's testimony to the contrary, Gallicio's testimony showed that, after the manager of the lounge introduced him to Demitro, Demitro told Gallicio that defendant was trying to sell him some drugs. After Gallicio followed Demitro and defendant into the restroom and while Gallicio was inside the restroom, Gallicio overheard defendant talking to Demitro. He heard defendant use the terms "amphetamines" and "speed" and tell Demitro that it would cost him a dollar per "hit"; and Gallicio saw defendant reach inside his waistline and pull out a clear bag containing blue tablets, which defendant returned to his waistline as Gallicio approached to make the arrest. Based upon the foregoing facts and circumstances, Gallicio clearly had probable cause to arrest *586 defendant. Hence, Gallicio's search of defendant's person and the seizure of evidence found during that search was legal as incident to a lawful arrest.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment, defendant contends that the trial court erred by denying his motion for a continuance. He argues that the trial court's refusal to grant the motion was prejudicial to his case and constituted an abuse of the trial court's discretion.
The record reflects that, immediately after the trial court denied defendant's motion to suppress and before the jury was selected, the prosecutor filed a "NOTICE OF INTENTION TO USE INCULPATORY STATEMENT," in accordance with LSA-C. Cr.P. art. 768. The notice disclosed that the prosecutor intended to introduce defendant's statement to Gallicio that the pills he tried to sell were a "look alike" drug. In moving for a continuance, defense counsel claimed surprise by the disclosure made in the state's 768 notice.
As a general rule, the denial of a continuance is not grounds for reversal of a criminal conviction absent an abuse of discretion and a showing of specific prejudice caused by denial of the continuance. State v. Jones, 395 So.2d 751 (La.1981). Where the continuance motion is based upon the want of time for preparation by counsel, this specific prejudice requirement has been disregarded only in cases where the preparation time was so minimal as to cast doubt on the basic fairness of the proceedings. State v. Dupre, 408 So.2d 1229 (La.1982); State v. Olsen, 496 So.2d 1260 (La.App. 1st Cir.1986).
Herein, defendant's inculpatory statement was disclosed in the state's timely filed 768 notice at defendant's March 18, 1987, trial. Additionally, the state had previously informed defendant (in its answer to defendant's motion for discovery filed on August 6, 1986) as to the existence of the inculpatory statement, when, where and to whom the statement was made. Under these circumstances, defendant clearly was neither prejudiced nor surprised; and, hence, the trial court did not abuse its discretion in denying defendant's motion for a continuance. Cf. State v. McPhate, 393 So.2d 718 (La.1981).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends that the trial court erred by overruling his objection to the admission into evidence of S-2, an evidence envelope containing the clear bag and tablets seized from defendant. He argues that S-2 should not have been admitted into evidence on two bases. First, he relies on the same contention we previously addressed in assignment number one and found meritless. Next, he argues that the state failed to establish the requisite foundation for introduction of S-2.
To admit such evidence at trial, the identification can be visual or it can be by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. West, 484 So.2d 930 (La.App. 1st Cir.1986). It is not necessary that all possibility of alteration be eliminated for evidence to be admissible, as long as the evidence establishes connexity by a preponderance of the evidence. See State v. Whittaker, 463 So.2d 1270 (La.1985).
Moreover, showing of a continuous chain of custody is not essential to the introduction of physical evidence as long as the evidence as a whole establishes that it is more probable than not the same object originally seized. Deficiencies in the chain of custody are also attributable to the weight of the evidence, not its admissibility. State v. West, supra.
In the instant case, Detective Gallicio testified that he sent in as evidence the blue tablets and the clear bag that he seized from defendant and he delivered those items to the Louisiana State Police Crime Laboratory. Gallicio visually identified S-1, the scientific analysis report, as the report subsequently received from the laboratory. He testified that the report reflected that the items received by the laboratory corresponded to the items he *587 delivered to the laboratory. The testimony of Detective Ben Lodell of the Houma Police Department shows that on February 26, 1987, he obtained S-2 from the Louisiana State Police Crime Laboratory and that he returned to Houma with the evidence. Because the Houma City Police Department's evidence officer, Lt. Bill Null, had left work for the day, Lodell locked the evidence inside Null's office. Null and Lodell testified that they are the only persons having a key to Null's office, that on February 27 the office was still locked, and that they were together when Null unlocked the door and entered his office. Lodell testified that the evidence was in the same place he had left it. Null testified that, as he and Lodell walked into his office, Lodell informed him that he had left evidence on his desk. Null further testified that he placed the evidence in the evidence room, to which only he has a key, and that the evidence remained locked inside the evidence room until he brought the evidence to court for defendant's trial.
We find that the testimony of Gallico, Lodell and Null established more probably than not that the items comprising S-2 were the ones involved in the instant case.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant contends that the trial court erred by denying his motion for new trial. Defendant bases his argument entirely on the contentions he raised in assignments one through three, which we have found to be without merit. Hence, this assignment also lacks merit.

PATENT ERROR
This Court has discovered error patent on the face of the record which requires us to remand this matter for resentencing. LSA-C.Cr.P. art. 920. A bill of information charging defendant as a multiple offender was filed after the jury convicted him of attempted distribution of a substance falsely represented to be a controlled dangerous substance. The bill of information charged that he had been convicted of simple robbery on January 22, 1986.
LSA-R.S. 15:529.1(D) provides that, upon the filing of a multiple offender bill of information, the trial court shall cause the defendant to be brought before it and "shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." State v. Martin, 427 So.2d 1182, 1185 n. 4 (La.1983). LSA-R.S. 15:529.1 further implicitly provides that the defendant should be advised by the court of his right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983).
The record reflects that, on the date of defendant's multiple offender hearing, the trial court advised defendant of the specific allegation contained in the multiple offender bill of information and of his right to a full hearing on the matter. Defendant admitted the truth of the allegation and waived his right to a hearing. However, the trial court did not inform defendant of his statutory right to remain silent. Such a failure requires that defendant's multiple offender adjudication be reversed, his sentence be vacated and the matter be remanded for resentencing, see State v. Johnson, supra, and constitutes error patent on the face of the record. State v. Perkins, 517 So.2d 314 (La.App. 1st Cir. 1987); State v. Burge, 506 So.2d 759 (La. App. 1st Cir.1987).
AFFIRM CONVICTION, REVERSE MULTIPLE OFFENDER ADJUDICATION, VACATE SENTENCE AND REMAND FOR RESENTENCING.
NOTES
[1] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979); State v. Brown, 481 So.2d 679, 683 n. 1 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La. 1986).