598 So.2d 1147 (1992)
STATE of Louisiana
v.
Russell K. FRANKLIN.
No. KA 91 0080.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Rehearing Denied May 28, 1992.
*1148 Abbott Reeves, Asst. Dist. Atty., Donaldsonville, for the State.
Darrell Cvitanovich, Baton Rouge, for the defense Russell K. Franklin.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
LeBLANC, Judge.
Defendant, Russell K. Franklin, was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967 C. Defendant entered a plea of not *1149 guilty. Subsequently, he filed a motion to suppress physical evidence (and inculpatory statements or confessions).[1] After a hearing, the trial court denied the motion. Defendant withdrew his not guilty plea, pled guilty as charged and reserved his right to appellate review of the denial of his motion to suppress. See, State v. Crosby, 338 So.2d 584 (La.1976). Defendant was sentenced to imprisonment at hard labor for a term of five years; however, the trial court suspended the prison term and placed defendant on supervised probation for three years, subject to various conditions. Defendant now appeals, urging in a single assignment of error that the trial court erroneously denied his motion to suppress physical evidence.
The state presented the testimony of Officer Benny Delaune at the suppression hearing. Defendant did not introduce any evidence at the hearing. A summary of Delaune's testimony follows.
On the night of April 10, 1988, Officer Delaune was alone, sitting in an unmarked police car in the parking lot of Rumors Lounge in Ascension Parish, conducting surveillance for narcotics activity. The police had received numerous complaints of narcotics activity in the area of Rumors Lounge, and Delaune had previously conducted surveillance and had made arrests in that area. Shortly before midnight, Delaune noticed two black males (one of whom subsequently identified himself to Delaune as defendant) exit the front door of Rumors Lounge and get into a vehicle parked in front of the lounge, approximately ten to fifteen feet directly in front of the vehicle in which Delaune was seated. Fluorescent lights extended along the entire walkway in front of the lounge were illuminated, allowing Delaune to see inside the Toyota. From where he was seated, Delaune saw defendant (who was sitting on the driver's seat in the Toyota) retrieve a small, clear vial. At that time, Delaune could not see what was in the vial. Although Delaune had not seen defendant retrieve the vial from his pants pocket, Delaune assumed, based on defendant's "body movements", that defendant had taken the vial from his pants pocket or pants. According to Delaune, he did not suspect defendant of criminal conduct at this point. However, Delaune then observed defendant lean over and remove something from the vial with either his fingernail or a small spoon and appear to "snort [what he had removed from the vial] through his nose."
At about that time, several other patrons exited the lounge and walked by the Toyota. Defendant and his companion appeared to get nervous; and defendant then drove the Toyota around to the side of the lounge, which was a more secluded location. At that time, Delaune exited his vehicle and walked toward the Toyota, whereupon he stopped the two subjects and advised them that he was a police officer. The subjects gave Delaune their names at Delaune's request, and Delaune patted down both subjects. While still detaining the subjects, Delaune asked defendant to remove the contents of his pockets. Defendant complied, by removing a plastic vial from his pants' pocket, without indicating any objection to Delaune's request. Delaune seized the vial, which contained a white powder residue, which Delaune believed to be cocaine.
Rather than formally arresting defendant at that time, Delaune released defendant after advising defendant that he intended to have the contents of the vial chemically analyzed. During his testimony, Delaune indicated that he did not formally arrest defendant for essentially two reasons. One, if he had formally arrested defendant, he would not have been able to continue his drug surveillance and make arrests of other persons that night at that same location; and two, because the vial contained only residue, he wanted to make sure there was enough residue for a chemical analysis before he effected a formal arrest.
*1150 Subsequently, the vial together with its contents were submitted to the Louisiana State Police Crime Laboratory for chemical analysis. Defendant was arrested after analysis established that the vial contained cocaine.
In denying the motion to suppress, the trial court stated that it felt that the instant case was a "simple case of plain view". However, by way of elaboration, the court indicated that it was Delaune's observations of what he believed was criminal behavior by defendant (i.e., snorting cocaine) that provided a level of articulable suspicion to justify the subsequent stop and search of defendant for the vial, which Delaune had seen earlier in plain view.
Defendant argues that the facts and circumstances show that the officer's infringement of his right to be free from governmental interference was based on the officer's pure speculation, hunch or assumption that he was snorting cocaine and that the activity in which the officer observed him engaged could have been either innocent or criminal. Thus, defendant contends that there was neither reasonable suspicion for an investigatory stop nor probable cause for his arrest. Defendant further argues that the seizure of the vial from his person cannot be justified under the plain view doctrine, as a search incident to a lawful arrest or as the product of a consensual search.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909, 911 (La. 1986). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Payne, 489 So.2d 1289, 1291 (La. App. 1st Cir.), writ denied, 493 So.2d 1217 (1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Bracken, 506 So.2d 807, 811 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (1987). The totality of the circumstances must be considered in determining whether or not reasonable suspicion exists. State v. Payne, 489 So.2d at 1291-92.
On the other hand, a peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La. C.Cr.P. art. 213. Probable cause to arrest exists when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity and thus justify an infringement on his constitutionally protected right of freedom from governmental interference. State v. Buckley, 426 So.2d 103, 107 (La.1983). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Buckley, 426 So.2d at 107; State v. Sterling, 479 So.2d 641, 642 (La.App. 1st Cir.1985), writ denied, 482 So.2d 626 (1986).
All of the information then in the possession of the police is to be considered in the determination of whether probable cause existed for the arrest. State v. Buckley, 426 So.2d at 109. The quantity and quality of evidence needed for probable cause are measured by lesser standards than those for conviction of the defendant at trial. Brinegar v. United States, 338 U.S. 160, 174-175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); State v. Buckley, 426 So.2d at 109. Although mere suspicion cannot justify an arrest, the officer does not need proof sufficient to convict. State v. Sterling, 479 So.2d at 643. The circumstances must show that criminal conduct is *1151 more probable than noncriminal activity. Equivocal conduct does not afford probable cause for arrest where the possibility of criminal conduct is not greater than the possibility of innocent behavior. State v. Bordelon, 538 So.2d 1087, 1090 (La.App. 3d Cir.), writ denied, 546 So.2d 1211 (1989).
The nature of the area of suspected criminal activity is relevant to a determination of probable cause. See, State v. Buckley, 426 So.2d at 108. The reputation of an area is an articulable fact upon which a police officer may legitimately rely. State v. Buckley, 426 So.2d at 108. See, United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). Such so-called high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. State v. Buckley, 426 So.2d at 108. In the instant case, Officer Delaune testified that, prior to the instant incident, he had made "maybe a hundred" narcotics arrests. The police had received numerous complaints of narcotics activity in the area of Rumors Lounge, and Delaune had previously conducted surveillance and had made prior arrests in that area. On the night in question, from a distance of about ten to fifteen feet, while inside his own vehicle and with the aid of the lights at the front of the lounge, Delaune saw defendant retrieve a small, clear vial, lean over, remove something from the vial with his fingernail or a spoon and appear to "snort it through his nose", which is characteristic of snorting cocaine. At approximately that same time, defendant and his companion appeared to become nervous when patrons exited the lounge and walked near the Toyota; and defendant then drove the Toyota to a more secluded location on the side of the lounge. Although Delaune acknowledged during his cross-examination that it was possible defendant could have been engaged in innocent conduct, he steadfastly maintained that he believed defendant was snorting cocaine rather than engaging in noncriminal activity. In taking that position, Delaune stated that "anybody with any knowledge at all of narcotics use, they couldn't have missed it in my opinion." The totality of these facts and circumstances which came within the officer's knowledge before he stopped defendant, when judged by the probabilities and practicalities of everyday life on which average people and particularly average police officers can be expected to act, provided the officer with probable cause to stop and arrest[2] defendant for illegal drug possession.
When there is probable cause but no formal arrest, a limited search to preserve evidence is justified. Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973); State v. Melton, 412 So.2d 1065, 1068 (La.1982). Herein, the same facts and circumstances establishing probable cause for defendant's arrest also provided the officer with ample reason to believe defendant was in possession of evidence of his crime. Further, exigent circumstances were present since defendant was aware of Officer Delaune's observations and could have, and in all likelihood would have, disposed of any evidence of the suspected crime in his possession if that evidence had not been seized immediately. The reasonable and probable cause which existed, together with the exigent circumstances present, justified the limited warrantless search of defendant's person and seizure of the vial.[3]See, United States v. Hall, 739 F.2d 96, 100 (2nd Cir. 1984); Loman v. State, 806 P.2d 663, 666-667 (Okl.Crim.1991). Accordingly, the trial court correctly denied defendant's motion to suppress the physical evidence.
This assignment lacks merit.

*1152 PATENT ERROR
Under the authority of La.C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error caused by the trial court's failure to give defendant credit for time served. See, La.C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that defendant is to be given credit for time served. See, La.C.Cr.P. art. 882(A); State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990).
Resentencing is not required. However, we remand the case and order the trial court to amend the commitment and the minute entry of sentencing to reflect that defendant is to be given credit for time served in actual custody prior to imposition of sentencing as required by La.C.Cr.P. art. 880. See, State v. Tanner, 534 So.2d 535 (La.App. 5th Cir.1988).
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH ORDER.
NOTES
[1] The record of the suppression hearing fails to reflect that defendant made any inculpatory statements or confessions.
[2] We note that because there was probable cause (the greater level of suspicion required for an arrest) at the time defendant was stopped, reasonable suspicion (the lesser level of suspicion required for an investigatory stop) also existed.
[3] Because we find that the stop/detention, search and seizure were lawful for the reasons stated in the opinion, we need not, and do not, specifically address defendant's contentions that the seizure cannot be justified under the plain view doctrine, as a search incident to a lawful arrest or pursuant to a consensual search.