650 So.2d 319 (1995)
Ciro F. TABORA,
v.
CITY OF KENNER.
No. 94-CA-613.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1995.
Writ Denied March 30, 1995.
*320 John A.E. Davidson, Metairie, for plaintiff/appellant, Ciro F. Tabora.
Dorothy A. Pendergast, James D. Maxwell, Ansardi, Maxwell & Power, Kenner, for defendant/appellee, City of Kenner.
Before BOWES, GRISBAUM and WICKER, JJ.
BOWES, Judge.
The plaintiff, Ciro Tabora, filed suit against the City of Kenner for damages for false arrest and imprisonment, malicious prosecution and personal injury. After a trial on the merits, the court rendered judgment dismissing plaintiff's suit. Plaintiff now appeals. We affirm.

FACTS
On April 28, 1989 at approximately 4:30 p.m., Mr. Tabora drove to the airport to pick up his wife. He parked in a no parking zone and entered the terminal.
Officers Thomas Vadell and Steve Caravella were on traffic duty that day. Officer Vadell testified that when he saw Tabora's car parked in a no parking zone, he had a page issue over the public address system for the owner of the vehicle but no one came to move the car. He then called for a tow truck which was standing operating procedure. Plaintiff came out of the terminal after the tow truck had arrived and had been positioned in front of the car. Officer Vadell testified that, at this time, he told Mr. Tabora about the parking violation and the parking problems involved and requested that the car be moved.
Plaintiff began to curse and scream and he told the officer it was "none of his business." Plaintiff first entered his car momentarily and then exited the car and told Officer Vadell he was going to call a friend (apparently the officers) superior and "have their jobs." As plaintiff attempted to reenter the terminal, Officer Vadell told him he had to stay. The officer put out his arm to stop plaintiff and plaintiff pushed him. Officer Vadell then placed Mr. Tabora under arrest. Tabora screamed at the officers and threatened to terminate the jobs of both and also threatened their families.
Officers Vadell and Caravella both testified that they then transported Mr. Tabora to the police holding room on a different level inside the terminal. They both said Mr. Tabora was very uncooperative and kept jerking and twisting away from the officers; and Vadell said he kept falling downapparently intentionally. Once inside the holding room, they said plaintiff either kneed or kicked Officer Caravella in the groin (which Officer Caravella said required a trip to St. Jude Hospital for treatment).
The officers next transported Mr. Tabora to the Kenner Lockup. While en route, they said plaintiff continued to yell and scream and he also spit at the officers through the cage in the public car.
Mr. Tabora testified at trial that he had left his car for five to seven minutes when a skycap told him his car was about to be towed. He exited the terminal and saw the two police officers who told him to move his car. Tabora agreed and told his son, in Spanish, to get in the car. He then entered the car, but was forcefully removed by Officer Vadell who hit him, threw him against *321 the car and handcuffed him. He said the officers then led him to the police room. Tabora also testified that he walked normally and did not attempt to twist or jerk away from the officers. Once inside, he said Officer Caravella called him derogatory names and kicked him. He was then transported to Kenner Lockup. Tabora denied cursing, screaming, or spitting at the officers.
Walter Tolliver, Cornelius Hurst and Nolan Batiste were skycaps on duty on April 28, 1988.
Tolliver testified that he saw plaintiff park his car, exit with his son and enter the terminal. When plaintiff returned, he was told by the officer to move his car. Plaintiff said something to his son who exited the car and went inside the terminal. The officer then pulled plaintiff out of the car and handcuffed him. Tolliver further testified he was standing close to plaintiff and the officer and that he did not hear plaintiff yell or curse.
Hurst testified that he saw plaintiff exit the terminal, talk to the officer and then attempt to get into the car. The officer told plaintiff to get out of the car. Hurst went inside the terminal to get plaintiff's wife. When he returned, plaintiff was handcuffed. Hurst further testified that he did not hear plaintiff yell or curse.
Batiste testified that he saw plaintiff exit the terminal and walk to his car. Plaintiff met two officers and they had "some kind of words." After the words, plaintiff was handcuffed.
Martha Douglas, plaintiff's wife on April 28, 1988, the time of the occurrence, and plaintiff's brother, Mauricio Tabora, both testified that they saw the police officers and plaintiff inside the terminal on their way to the police room and that plaintiff was walking normally at that time.
The record also reflects that Mr. Tabora was examined in the Kenner Lock-up by an emergency medical team ("EMT") from East Jefferson General Hospital and also in the Jefferson Parish Correctional Center. The EMT report reflected "no significant trauma noted, only slight abrasion."
Mr. Tabora was subsequently charged by the State of Louisiana with violations of La. R.S. 14:103, disturbing the peace; La.R.S. 14:34.2, simple battery of a police officer (two counts); and La.R.S. 14:108, resisting an officer (two counts). He was tried in First Parish Court and found not guilty on all counts. He was also charged by the City of Kenner with violations of Ord. 722 § 7-88, obstruction of police; Ord. 772 § 7-81.2, disturbing the peace; Ord. 772 § 7-44.7, criminal mischief; and Ord. 772 § 7-71, spitting in public. After completion of the above trial in First Parish Court, these charges were dismissed.

ANALYSIS
In this appeal, Mr. Tabora argues that the trial court erred in its factual findings based on the evidence and the testimony presented by both plaintiff and defendant. In our review of the factual findings made by the trial court herein, we are obligated to follow the constraints set forth by the Louisiana Supreme Court. In Rosell v. ESCO, 549 So.2d 840, 845 (La.1989) the court held that when "a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell further stated that the only factual findings subject to reversal were those "[W]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." Id. at 845.
In Stobart v. State, through DOTD, 617 So.2d 880, 883 (La.1993), the court restated the principle that a factfinder's choice between two permissible views of the evidence "cannot be manifestly erroneous or clearly wrong;" and in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993) the courts of appeal were instructed to give great, "even vast" deference to the findings of fact made by the trial court. As was noted by our brethren in the Fourth Circuit, "With each pronouncement, the Supreme Court's language becomes stronger...." With these pronouncements of the Louisiana Supreme Court in mind, we now turn to the issues presented by this appeal.
*322 In written reasons for judgment, the trial judge said:
The Court finds from the testimony at trial that Officer Thomas Vadell and Officer Steve Caravella had probable cause to arrest Mr. Tabora. The officers acted in good faith in making the arrest. The Court further finds that the actions of the officers in arresting the plaintiff were not unreasonable. The plaintiff did not bear his burden of proof.

ALLEGATION OF ERROR NUMBER ONE
Plaintiff first alleges that there was no probable cause for his arrest and, therefore, he was entitled to damages for false arrest and false imprisonment.
A police officer may lawfully arrest a person without a warrant when he has probable cause to believe that the person to be arrested has committed an offense. La. C.Cr.P. 213. Probable cause to arrest exists when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity and thus justify an infringement on his constitutionally protected right of freedom from governmental interference. State v. Buckley, 426 So.2d 103 (La.1983); State v. Franklin, 598 So.2d 1147 (La.App. 1 Cir.1992).
Probable cause must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Franklin, supra.
In the present case, the undisputed facts showed that Officer Vadell discovered Mr. Tabora's car illegally parked in front of the airport terminal. When Mr. Tabora approached, Officer Vadell testified that he then requested that plaintiff move his car. Plaintiff responded by shouting and cursing, and he threatened to have Officer Vadell's job. Then, instead of moving his car as requested, plaintiff started to re-enter the terminal. When Officer Vadell tried to stop him from leaving, Tabora pushed him.
Officer Caravella testified that he heard Tabora cursing Officer Vadell and he went over to the two to assist Vadell. It was Caravella's impression at the time of trial that Tabora pushed Vadell and attempted to get into the car; however, Caravella also testified that his recollection of the initial encounter was "hazy" because he really didn't pay much attention until he heard the shouting. Also, we note that six years had elapsed from the date of the incident to the date of trial.
Based on all of this testimony and these facts, the trial court found that the officers had probable cause to arrest the plaintiff. It is obvious that the trial court chose to credit the testimony of Officer Vadell and not plaintiff in reaching this decision. We see no manifest error in this ruling of the trial court.
Having upheld the trial court's finding that there was probable cause to arrest the plaintiff, we find that he is not entitled to damages for false arrest and/or false imprisonment. The tort of false arrest, or false imprisonment, has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. Edmond v. Hairford, 539 So.2d 815, 817 (La.App. 3 Cir. 1989). Malice is not a necessary element of the tort of false imprisonment and is immaterial except as it may affect the question of damages. Edmond, supra: Fontenot v. Lavergne, 365 So.2d 1168 (La.App. 3 Cir.1978). Plaintiff's arrest was made with probable cause and, thus, his arrest and subsequent detention were not unlawful and he is not entitled to damages for same.

ALLEGATION OF ERROR NUMBER TWO
Plaintiff next alleges that he is entitled to damages for assault and battery. In this connection, he alleges that he was intentionally kicked by the police officers, causing injury in the form of a large bruise to his right thigh, while he was legally resisting an unlawful arrest.
Officers Vadell and Caravella testified that they placed the plaintiff in handcuffs and led him to the police holding room, located on a different level of the terminal. En route, the plaintiff kicked and jerked his body, and kept *323 trying to "twist" away from them. Vadell testified that plaintiff also dropped to his knees and refused to walk several times. After entering the police room, plaintiff kicked Officer Caravella in the groin and so he was placed "up against the wall." Both officers denied kicking or hitting plaintiff.
Tabora testified that he walked quietly with the officers to the police room, and that he did not kick or jerk. He stated that once inside, Officer Caravella made insulting and offensive remarks to him, placed him up against the wall and kicked him.
The plaintiff's wife and brother testified that they followed the plaintiff and the officers to the police room and that the plaintiff was not struggling. They further said that while they were standing outside of the police room, they heard the plaintiff scream. Mr. Tabora's brother testified that Mr. Tabora knew they were outside of the room at that time. Here again, the trial court credited the testimony of the police officers over that of the plaintiff's wife and brother and found that their actions were not unreasonable.
It is apparent that the trial court also found plaintiff did not prove that he was the victim of an actionable assault and battery. In fact, the trial court stated in its reasons for judgment that "plaintiff did not bear his burden of proof." Again, we find no manifest error in these factual findings by the trial court.

ALLEGATION OF ERROR NUMBER THREE
Plaintiff next alleges that he is entitled to damages for malicious prosecution of the criminal charges of which he was ultimately acquitted as well as the legal fees he incurred in defending these prosecutions.
The law regarding malicious prosecution is well established:
An action for malicious prosecution in a criminal proceeding lies in all cases where there is a concurrence of the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.
* * * * * *
The individual interest in freedom from unjustifiable litigation and the social interest in supporting a resort to law have traditionally been balanced by the requirement that the plaintiff must prove these essential elements to establish a malicious prosecution action against an accuser.
* * * * * *
Chief among these elements is the requirement that the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued without `probable cause'. Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.
The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjuncture will not suffice. Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available. The reputation of the accused, his opportunity to offer explanation, and the need for prompt action, if any, are all factors in determining whether unverified information furnishes probable cause.
Second of importance in actions of malicious prosecution is the element of defendant's malice. However, malice does not submit readily to definition. It means something more than the fictitious `malice in law' which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. *324 But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to `tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. On appellate review such a finding is reversible only if manifestly erroneous or clearly wrong.
[Emphasis supplied, citations omitted].

Miller v. East Baton Rouge P. Sher. Dept., 511 So.2d 446 (La.1987); Spearman v. Harris, 542 So.2d 606 (La.App. 5 Cir.1989).
Joseph v. Cannon, 609 So.2d 838, 841 (La. App. 5 Cir.1992).
As we stated supra, there was probable cause for these proceedings against Mr. Tabora. The fact that he was found not guilty of the charges does not negate the finding of probable cause. The Constitution does not guarantee that only the guilty will be arrested. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
In addition, plaintiff did not prove that the defendant acted with malice in the proceedings against him. The absence of malice is fatal to an action for malicious prosecution. Joseph v. Cannon, supra. In this case, the officers testified that, after the plaintiff's arrest, they had nothing further to do with the continuation of the prosecution. Once the prosecution was initiated against the plaintiff, the officers had no control over the dismissal of the charges against him; at that stage in the proceedings, only the prosecuting attorney had discretion to dismiss the charges. Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3 Cir.1987). Furthermore, although the City of Kenner had instituted its own prosecution against plaintiff for ordinance violations arising from the incident, the case was continued at the request of Mr. Tabora and the case in First Parish Court was dismissed after completion of the state's case.
Accordingly, we find that the trial court did not err in ruling that plaintiff failed to prove his cause of action for malicious prosecution.

ALLEGATION OF ERROR NUMBER FOUR
In this final assignment of error, plaintiff alleges that the trial court erred in failing to find the officers and the City of Kenner liable. However, as we have stated supra, we find that plaintiff has failed to prove that he has an actionable claim based on the conduct of the police officers and, therefore, the trial court did not err in dismissing the suit against them.
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against the plaintiff/appellant.
AFFIRMED.